# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                     **Case No. 06-CR-335**

**TEODORO MERAZ**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Teodoro Meraz pleaded guilty to conspiracy to distribute 5 kilograms of more of cocaine, 21 U.S.C. §§ 841(a)(1)& (b)(1)(A) and 846, and I set the case for sentencing. In imposing sentence, I follow a two-step procedure: (1) calculate the advisory guideline range, resolving any disputes necessary to that determination, then (2) select a sentence that is sufficient but not greater than necessary under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

### I. GUIDELINES

Defendant's pre-sentence ("PSR") set a base offense level of 34, U.S.S.G. § 2D1.1(c)(3), added 4 levels for aggravated role in the offense, § 3B1.1, then subtracted 3 for acceptance of responsibility, § 3E1.1, for a final level of 35. The PSR further assessed a criminal history category of II, producing an imprisonment range of 188-235 months. In a lengthy sentencing memo, defendant raised five guideline-related challenges to the PSR, which I addressed in turn.

## A. Nature of Information Contained in PSR

Beginning on page 3 of his memo, defendant took issue with the PSR's prefatory comment – "according to the government" – in the offense conduct section. In cases resolved by plea, such as this one, the offense conduct section of a PSR is often taken substantially from the prosecution version, so I saw nothing improper in this comment.

Further, the offense conduct section in defendant's PSR was derived primarily from the factual basis set forth in the plea agreement. Defendant admitted the facts in ¶ 5 of that agreement at his plea hearing. In fact, aside from some re-ordering and the insertion of the names of co-defendants in the PSR, the two documents were virtually identical. The last paragraph on page 2 of the agreement corresponded to ¶¶ 11 and 12 of the PSR; the first paragraph on page 3 of the agreement to ¶ 12 of the PSR; the balance of page 3 to ¶¶ 13, 32 and 33 of the PSR; the middle paragraphs on page 4 to ¶¶ 34 and 35 of the PSR; the last paragraph on page 4 carrying over to page 5 of the agreement to ¶ 14 of the PSR; the second and third paragraphs on page 5 of the agreement to ¶¶ 15 and 16 of the PSR; page 6 of the agreement matched ¶¶ 17 and 18 of the PSR; page 7 matched ¶¶ 19-21 of the PSR; and page 8 corresponded to ¶¶ 22-24.

The only information contained in the offense conduct section of the PSR not founded on the plea agreement was in ¶¶ 26-31, pertaining to co-defendants Richard Welsh and Andrew Oblak, none of which materially affected the guidelines, and ¶ 36-37, pertaining to co-defendant Fidel Moreno. Defendant submitted nothing specific contradicting these additional paragraphs, as he was required to do. The Seventh Circuit has held that where a court relies on a PSR in sentencing, it is the defendant's task to show that the facts contained in the PSR are inaccurate. A defendant cannot show that a PSR is inaccurate by simply denying the

2

PSR's truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question. United States v. Mustread, 42 F.3d 1097, 1101-02 (7th Cir. 1994).

Because defendant failed to make the required submission, and because he admitted the operative facts, I rejected his criticism of the PSR on page 3 of his sentencing memo. I also rejected his contention on page 15 of his memo that the plea agreement was simply a compromise of contested issues, allowing him to take a different position at sentencing. The court accords a presumption of verity to a defendant's statements in connection with a plea, United States v. Loutos, 383 F.3d 615, 619 (7th Cir. 2004); he cannot later disavow those statements and try to start anew. See United States v. Stewart, 198 F.3d 984, 987 (7th Cir. 1999). Defendant pleaded guilty to a 5 + kg cocaine conspiracy; he could not at sentencing claim that he was just a simple buyer/seller.[1]

## B.   Criminal History Score

Beginning on page 4 of his memo, defendant challenged his criminal history score. He first claimed that the two offenses listed in ¶ 54 of the PSR (battery and misleading an officer) should be counted as one conviction, but the PSR did that; the two counts (which were joined

---

[1] In two supplemental memos filed on the day of sentencing, defendant argued that the government's position was based on hearsay, and that the government had manipulated the order in which the defendants in this case were sentenced to his detriment. Regarding the first point, the rules of evidence do not apply at sentencing, and the court may consider reliable hearsay. See, e.g., United States v. Sanchez, 507 F.3d 532, 538 (7th Cir. 2007). As discussed in the text, the evidence I relied upon in this case was reliable; virtually all of it was derived from the conceded facts in the plea agreement. Second, defendant presented no evidence of government manipulation of the sentencing process in this case. As discussed in the text, the sentence in this case was based on defendant's admitted conduct and statutory requirements. Defendant has no right, constitutional or otherwise, to receive the same sentence as his co-defendants.

3

in the same complaint) were not scored separately. Defendant also claimed that count two in that case, the misleading an officer charge, should not score under U.S.S.G. § 4A1.2(c)(1). But the points assessed in ¶ 54 arose from the battery conviction, which was a countable offense under § 4A1.2(c), and the PSR properly assessed 2 points under §§ 4A1.1(b), 4A1.2(a)(2) & 4A1.2(k) based upon defendant's six month sentence after revocation.

Defendant also argued that the safety valve criterion requiring that the defendant have no more than 1 criminal history point under the guidelines had been rendered advisory by Booker. However, courts have uniformly rejected this argument. See, e.g., United States v. Branch, No. 06-5393, 2008 WL 3288304, at *10 (6th Cir. Aug. 12, 2008) (collecting cases from the 9th, 8th, 1st, 10th, 7th, 3rd, 11th and 2nd Circuits). As the Branch court noted, under Apprendi and its progeny no Sixth Amendment problem arises when a court determines a defendant's criminal history, and 18 U.S.C. § 3553(f) falls squarely within the remainder of the Sentencing Reform Act unaffected by Booker's remedial ruling. Id. at *9-10. Finally, Booker provides no authority for courts to ignore statutory mandatory minimums or the limitations on imposing sentence below those minimums set by Congress. Id. at *10-11; see also United States v. Lee, 399 F.3d 864, 866 (7th Cir. 2005) (noting that Booker does not give sentencing courts any discretion to disregard a statutory mandatory minimum). Therefore, I rejected this argument.

On page 5 of his memo, defendant attempted to attack the illegal entry conviction listed in ¶ 56 of the PSR. However, the opportunity for a defendant to collaterally attack a prior conviction at sentencing is strictly limited. Generally, this can be done only where the defendant was deprived of counsel in violation of Gideon. See, e.g., United States v. Arango-Montoya, 61 F.3d 1331, 1336 (7th Cir. 1995). Defendant's speculation that his plea

4

may have been defective was insufficient, as was his citation of a Ninth Circuit case dealing with probable cause to arrest an alien. The PSR indicated that defendant was represented by counsel in this case, although it did not list the lawyer's name. Defendant did not even allege, much less show, that he was denied counsel in the case, so he failed to make a proper challenge under Custis v. United States, 511 U.S. 485 (1994) and its progeny. Finally, I noted that even if I excluded the 1 point for this offense, defendant still had 2, placing him in category II.[2]

**C.     Drug Weight**

Beginning on page 6 of his memo, defendant objected to the drug weight listed in the PSR. In a drug conspiracy, each conspirator is responsible not only for drug quantities directly attributable to him but also for amounts involved in transactions by co-conspirators in furtherance of the joint activity that were reasonably foreseeable to him. See, e.g., United States v. McLee, 436 F.3d 751, 765 (7th Cir. 2006). Under this rule, a low level street dealer will generally not be held accountable for the amounts handled by other low level dealers just because they are supplied by the same distributor, United States v. Pagan, 196 F.3d 884, 892 (7th Cir. 2000), but if the defendant occupies a higher level role, i.e. if he is the distributor, or if he otherwise demonstrates a substantial degree of commitment to the conspiracy's objectives, he typically will he held accountable, even if he does not know the exact amounts the others are dealing. In the latter situation, he takes his chances that the total may be quite large. See, e.g., United States v. Lezine, 166 F.3d 895, 906 (7th Cir. 1999). However, I noted

---

[2]Defendant claimed that the charges listed in ¶ 61 were not, as the PSR stated, dismissed because defendant was in federal custody but rather based on the state's failure to prosecute. Because this arrest did not affect the guidelines – and because I did not consider it in imposing the sentence – I made no finding on the issue under Fed. R. Crim. P. 32(i)(3)(B).

5

that when a conspiracy defendant personally engages in illegal conduct, his actions are deemed "relevant conduct" for sentencing purposes without resort to the reasonable foreseeability test of U.S.S.G. § 1B1.3(a)(1)(B). United States v. Gutierrez-Herrera, 293 F.3d 373, 376 (7th Cir. 2002). Based on the facts conceded in defendant's plea agreement, this principle represented the beginning and the end of defendant's drug weight challenge.

The facts sets forth in ¶ 5 of the plea agreement indicated that on December 1, 2006, defendant received 9 kilograms of cocaine from his "runner," Pedro Romo, and that defendant supplied co-defendant Antonio Cruz with 8 to 9 kilograms of cocaine during the course of the conspiracy. Even had I assumed that 1 of the kilograms Cruz received came from the 9 associated with the Romo delivery, the total amount with which defendant was personally and directly involved exceeded 15 kg of cocaine. Because the facts contained in the plea agreement alone were sufficient, United States v. Soto-Piedra, 525 F.3d 527, 532 (7th Cir. 2008), which defendant cited, was inapposite.

The government asserted a drug weight in the 15-50 kg range, and its position was certainly supported by a preponderance of the reliable evidence. As indicated, defendant conceded that he received 9 kilograms of cocaine from Romo on December 1, 2006, and Cruz stated that he received 8-9 kg of cocaine from defendant during the course of the conspiracy. Cruz's estimate was reliable and supported by the intercepted calls summarized in the PSR and plea agreement. The PSR further indicated that co-conspirator Fidel Moreno received, stored and packaged cocaine for defendant in his apartment, between 5 and 15 kg total. Because defendant was personally involved in these amounts they, too, could be attributed to him. Defendant presented no reason to question the admissions made by Cruz and Moreno. The PSR did not attribute specific weights to the amounts distributed to the other conspirators,

6

but the amounts discussed above were alone sufficient to place defendant above 15 kg, and defendant's dealings with the others further supported my finding that the offense involved at least 15 kg. Thus, I was satisfied that the drug weight was sufficient to support a base level of 34.

On page 8 of his memo, defendant argued that the plea agreement represented a not entirely happy meeting of the minds, in which each side made concessions. However, defendant admitted that the offense involved more than 5 kilograms, and as explained above, his factual admissions supported a drug weight of 15-50 kg under the guidelines. The fact that only 1 kg was ultimately recovered by law enforcement did not limit the amount for which defendant could be held responsible. See, e.g., United States v. Jeross, 521 F.3d 562, 576 (6th Cir. 2008); United States v. Moore, 130 F.3d 1414, 1419 (10th Cir. 1997). The balance of defendant's argument on pages 8 and 9 required no further discussion.

I noted that on page 30 of his memo defendant claimed that the plea agreement controlled and required a finding of a drug weight of 5 kg and base level of 32, but that was incorrect. The court determines drug weight by a preponderance of the evidence at the time of sentencing, see, e.g., United States v. Clark, No. 07-1297, 2008 WL 3844167, at *7 (7th Cir. Aug. 19, 2008), and nothing in the agreement guaranteed defendant any particular offense level or sentence.

**D.     Leadership Enhancement**

Beginning on page 10 of the memo, defendant contested the 4 level aggravated role enhancement under U.S.S.G. § 3B1.1(a). Under that guideline, the defendant receives a 4 level enhancement is he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; 3 levels if he was a manager or supervisor (but

7

not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive; and a 2 level increase if he was an organizer, leader, manager, or supervisor in criminal activity that did not involve five other participants. The guideline thus provides a range of adjustments to increase the offense level based upon the size of a criminal organization and the degree to which the defendant was responsible for committing the offense. U.S.S.G. § 3B1.1 cmt. background.

To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1 cmt. n.4. The government bears the burden of proving that the enhancement should apply by a preponderance of the evidence. United States v. Reneslacis, 349 F.3d 412, 416 (7th Cir. 2003).

I found that the government met its burden here. First, it was clear that this conspiracy involved more than five participants, i.e. persons criminally responsible for the commission of the offense, see U.S.S.G. § 3B1.1 cmt. n.1, including Ana Hurtado, Pedro Romo, Alejandro Romo, Richard Welsh, Antonio Cruz and Fidel Moreno. All of these persons either received cocaine from defendant or assisted defendant in his cocaine dealing during the period of the conspiracy. To the extent that defendant argued on pages 10-11 of his memo that he only had

8

a buyer/seller relationship with these people, his guilty plea to the conspiracy charged in count one scotched the argument, and the admitted facts clearly showed a conspiracy, i.e. standardized transactions, sales on credit, a continuing relationship and an understanding that drugs would be resold.  See, e.g., United States v. Bender, Nos. 06-3572, 06-3659, 2008 WL 3402670, at *3 (7th Cir. Aug. 13, 2008); United States v. Tingle, 183 F.3d 719, 724 (7th Cir. 1999).  And to the extent that defendant argued on page 11 that the government misconstrued some of the recorded calls, he presented no evidence of how or why the calls should be interpreted differently.  As indicated earlier, a defendant cannot simply come into court and say the PSR is wrong; he has to present some evidence supporting his position.  As also stated earlier, in this case defendant's task was doubly hard because he admitted most of the facts in the PSR in the plea agreement.

Second, it was clear, as defendant conceded in the plea agreement, "that other members of the conspiracy listed in the charged indictment assisted Meraz in Meraz's drug trafficking activities."  (Plea Agreement at 3 ¶ 5.)  The PSR in ¶ 38 indicated without contradiction that the Romo brothers worked at defendant's direction and acted as runners. The plea agreement on page 7 further indicated that Pedro Romo stored drugs for defendant and collected money owed to defendant for drug debts. Pedro Romo also traveled out of state to pick up 9 kg of cocaine for defendant on December 1, 2006.  The PSR further indicated in ¶ 38, again without specific contradiction, that Fidel Moreno also acted as a runner and stored and repackaged cocaine for defendant.  The PSR and the plea agreement further indicated that during the course of the conspiracy defendant participated in 463 drug-related phone calls, during which he facilitated drug deals for himself and his co-defendants.

This evidence was more than sufficient to show that the enhancement applied.

9

Defendant directed the Romos and Moreno in their assistance of his activities; he occupied a role at the top of the conspiracy, distributing to the lower level dealers such as Hurtado, Cruz and Welsh, at times fronting them cocaine and setting the price; he directed Hurtado regarding the circumstances of his deliveries to her. At the very least, defendant qualified as a manager or supervisor, as he managed the Romos and Moreno, which would require a 3 level enhancement and also disqualified defendant from the safety valve. The Seventh Circuit has made clear that the defendant need not direct all of the other participants; direction of even one will suffice. See, e.g., United States v. Howell, 527 F.3d 646, 649 (7th Cir. 2008). Here, defendant directed at least three.

Defendant did not really challenge the evidence of his leadership role in the PSR and plea agreement. Rather, culling statements from a warrant application and sentencing transcript, defendant attempted to argue that co-defendant Richard Welsh was actually the leader of the enterprise. The attempt failed. First, there can be more than one organizer or leader in a criminal association or conspiracy, U.S.S.G. § 3B1.1 cmt. n.4, so even if Welsh also occupied such a role, defendant could still receive the enhancement. Second, defendant's portrayal of Welsh was unpersuasive. Defendant supplied Welsh, and defendant submitted no evidence that, aside perhaps from his brother Andrew Oblak, Welsh directed anyone connected with this conspiracy. The fact that other potentially culpable parties remained uncharged was also largely irrelevant, as were the contents of Welsh's calls between December 9 and 23, 2006, after this conspiracy terminated, or his alleged possession of body armor or a gun. Defendant failed to support with any evidence his contention that the government downplayed Welsh's role in return for Welsh's cooperation against defendant.

Defendant presented evidence of his personal history, which he argued belies any

10

leadership role. I imposed this enhancement based on defendant's role in the instant offense; his character was relevant under § 3553(a) but not under § 3B1.1. A defendant can have family or financial problems and still be a leader or organizer in criminal conduct.

Finally, defendant claimed that the government had an improper motive in seeking this enhancement – to deny him the safety valve. But even if the government's motives were at issue defendant was already disqualified from the safety valve based on his criminal record. Nor could he argue that the government's position was a surprise; the plea agreement stated in ¶ 17 that the government would seek this enhancement. Defendant's claim that the sentencings of other co-defendants were adjourned to manipulate his sentence was false.

**E.     Safety Valve**

Finally, defendant challenged the denial of the safety valve. In order to qualify for the safety valve, which removes the statutory mandatory minimum, U.S.S.G. § 3553(f), and allows for a 2 level guideline reduction, U.S.S.G. § 2D1.1(b)(11), the defendant must establish the following five factors by a preponderance of the evidence:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct

11

>or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

See, e.g., United States v. Montes, 381 F.3d 631, 634 (7th Cir. 2004) (citing 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a)).

Because, as discussed above, defendant had more than 1 criminal history point and qualified as a leader, he was disqualified from the safety valve. As also discussed earlier, the advisory nature of the guidelines does not permit the court to ignore these statutory limitations.

Defendant argued that the government spurned his offers to debrief. I assumed for purposes of the argument that the government's unreasonable refusal to listen to a defendant who wants to come clean about his own offense could allow the court to deem satisfied the fifth safety valve criterion. But there was no point in pursuing that here, because defendant was disqualified for other reasons, namely his prior record and his leadership role in the offense. I also noted that under the circumstances of this case there would be nothing wrong with the government asking defendant to provide information about others who had not yet pleaded guilty; providing substantial assistance was defendant's only way out from under the 10 year mandatory minimum.

**F.    Guideline Departures**

Defendant made arguments for guideline departures on pages 22-29 of his memo, but as the Seventh Circuit has noted, the concept of departures is generally obsolete post-Booker, see, e.g., United States v. Rice, 520 F.3d 811, 821 (7th Cir. 2008), and in this case I considered those arguments under § 3553(a), which allows a broader consideration of the circumstances. To the extent that defendant argued that I should apply U.S.S.G. § 5K3.1, by

12

its own terms that provision applies only when the government makes a motion pursuant to an early disposition program. No motion was made here, and this district has no such program.

Therefore, I adopted the guideline calculations contained in the PSR: offense level 35, criminal history category II, and 188 to 235 months imprisonment

## II.  SENTENCE

**A.    Section 3553(a)**

Section 3553(a) directs the court to consider:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in §

13

3553(a)(2). Although the guidelines serve as the starting point and initial benchmark, Gall v. United States, 128 S. Ct. 586, 596 (2007), the district court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place any "thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination of what sentence is sufficient but not greater than necessary, taking into account the advisory guideline range, the relevant § 3553(a) factors, and any non-frivolous arguments presented by the parties in support of a particular sentence. United States v. Wilms, 495 F.3d 277, 282 (6th Cir. 2007). However, the court may not rely on § 3553(a) factors to reduce a mandatory minimum sentence required by statute. See, e.g., United States v. James, 487 F.3d 518, 530 (7th Cir. 2007); United States v. Duncan, 479 F.3d 924, 930 (7th Cir.), cert. denied, 128 S. Ct. 189 (2007).

**B.    Analysis**

This prosecution arose out of an investigation of a cocaine trafficking organization in the Waukesha, Wisconsin area. The court issued several Title III wiretaps, pursuant to which the government learned that one of the main players, Gabriel Urbina, was apparently supplied cocaine by this defendant. A T-III of defendant's phone revealed that he supplied cocaine to other members of the conspiracy, including Ana Hurtado, Richard Welsh and Antonio Cruz, while other members assisted him in other ways. The government tallied a total of 463 drug-related calls during the monitoring of defendant's phone, which the PSR and the factual basis section of the plea agreement both summarized.

As indicated above, defendant distributed in excess of 15 kilograms of cocaine, a significant amount. Defendant acknowledged his involvement in the drug trade, but indicated

14

that his involvement stemmed from the need to support his family. In his sentencing memo, he discussed some of the financial pressures which precipitated his activities. He expressed remorse and sorrow at the effect on his wife and children.

Defendant was twenty-eight years old, with a fairly limited record, a 2002 battery and misleading an officer case, for which he was initially placed on probation, but later revoked and ordered to serve 6 months in jail; a 2003 disorderly conduct case, for which he received a fine and 2 days jail; and a 2005 federal conviction for improper entry by an alien, for which he received a 30 day sentence. The PSR indicated that immigration authorities removed defendant on August 31, 2005 after he finished serving the illegal entry sentence. He returned at some point thereafter and committed the instant offense between August and December 2006.

Defendant was a citizen of Mexico, with nine siblings split between Mexico and the United States. He worked on his family's farm until age nineteen, when he came to the United States in search of employment. He apparently came initially on a valid work visa, but that expired years ago and he faced deportation after finishing the sentence in this case.

Defendant married in Waukesha in 2001, and he and his wife had two children, ages five and two, both of whom apparently have asthma. His wife also suffered from health problems, as he discussed on pages 13 & 14 of his memo. His wife stated that he was a good husband and father; she remained supportive and indicated that he committed this offense to support the family. She said she would follow him to Mexico should he be deported. She further stated that the battery case from 2002 (in which she was the victim) was an isolated incident and occurred when defendant was drunk. Defendant admitted some past controlled substance use, but he did not appear to have a significant current problem. Defendant worked

15

steadily in this country, although it was difficult for probation to verify, as he was apparently paid in cash for much of his labor.

The guidelines called for a term of 188-235 months. Under all of the circumstances, I found that a sentence somewhat below that range would be sufficient to satisfy the purposes of sentencing. This was a serious crime in that it involved a substantial amount of cocaine, and defendant occupied a significant role, but there were no other aggravating factors – no violence, weapon possession or threats. I also accepted that defendant's motive in initially becoming involved was financial need, and that he did not get rich doing this. The limited funds seized at the time of his arrest attested to that. Therefore, a sentence even at the minimum of ten years provided sufficient punishment.

Further, I noted that defendant had never served significant time before. His prior sentences were in the 1-6 month range. It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005). I also saw no need for a greater term to protect the public, given defendant's minimal record, which barely disqualified him from the safety valve. I also took into account his efforts at self-improvement in jail, particularly the nice letter from his AODA counselor.[3] Finally, I considered the fact that he would be removed from this country upon completion of this sentence.

---

[3]The counselor wrote that defendant's "regular attendance and attention in group demonstrates interest and a willingness to learn." (Def.'s Sentencing Memorandum Ex. A.)

16

Defendant presented two other arguments for a departure or non-guideline sentence. First, he noted that he had been confined in county jails since his arrest on December 1, 2006. The conditions at these facilities are harsher than at a federal prison. At the Waukesha County Jail, where he was housed from December 2006 to April 2008, his cell was cold and the bedding insufficient. At the Milwaukee County Jail, where he had been since April, he was held in a crowded cell with loud and violent inmates. He was afforded little exercise and recreation at either facility, and visits with family were strictly limited. He noted that despite the limited programming, he did what he could, taking stress management, nutrition and AODA classes.

Courts have found that extended stays at local jails lacking the resources of a federal prison may warrant a departure or non-guideline sentence, see, e.g., U.S. v. Salem, No. 06-CR-181, 2008 WL 1751369, at *4 (E.D. Wis. Apr. 11, 2008); and given defendant's nearly two years of pre-trial confinement, I found that some consideration was warranted in this case.

Defendant's second request was based on the fast track departure provision, but that guideline applies in immigration cases. It was designed to allow busy border districts to process more cases. Some courts, post-Booker, held that this provision creates disparity in those districts lacking early disposition programs, but I was aware of no such case outside of the immigration context. This was a drug case, and although defendant was here illegally and faced likely deportation, neither U.S.S.G. § 5K3.1 nor the possible disparity it created in districts lacking a fast track program were relevant here. To the extent that Kimbrough may have revived the concept of fast-track disparity, I found no such disparity in this case and declined to exercise my discretion to factor that into the sentence.

Under all of the circumstances, I found a sentence of 120 months sufficient but not greater than necessary to satisfy all of the purposes of sentencing. I stated that I would have

17

imposed the same sentence regardless of my findings on the disputed guideline issues. Even if I had imposed no leadership enhancement and adopted defendant's drug weight figure, the sentence would have been the same.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 120 months, followed by five years of supervised release, the conditions of which appear in the judgment.

Dated at Milwaukee, Wisconsin, this 25th day of August, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge